## Case No. 4,470.

### EMMONS et al. v. SLADDIN et al.

[2 Ban. & A. 199;[1] 9 O. G. 352.]

Circuit Court, D. Massachusetts. Dec., 1875.

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

[2] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

A. K. P. Joy, for complainants.
W. W. Swan, for defendants.

SHEPLEY, Circuit Judge.   Letters patent of Great Britain were duly granted to James Ellis, of Bradford, in the county of York, England, and the respondent, Joseph Sladdin, then of Halifax, in the same county, now of Lawrence in the commonwealth of Massachusetts, for an invention of Joseph Sladdin, in improvements in machinery for the manufacture of healds.

Sladdin and Ellis, the patentees, after the grant of said letters patent, by an instrument under seal, dated December 17, 1864, after reciting the grant and enrolment of said letters patent, and of an agreement with one David Bowlas for a sale to him of "the said invention and letters patent and also of all letters patent or extensions to be hereafter obtained on account of the said invention," and also of a machine constructed on the principle of said patented invention, and of the models, patterns, and other appurtenances granted, assigned, and confirmed to Bowlas, his executors, administrators, and assigns, "all that and those the said recited invention and letters patent, and also all and singular the benefits, privileges, and advantages arising out of or to be derived from the said invention and letters patent, and also all and singular other the letters patent and extensions of time thereof to be hereafter obtained on account thereof, and all models, patterns, and other matters, explanations thereof in the possession or power of the said James Ellis and Joseph Sladdin, and all the right, title, interest, claim, and demand of the said James Ellis and Joseph Sladdin, and each of them in, to, out of, or upon the said several premises, and also the said machine."

The habendum clause in the indenture is absolute as to the machine, models, patterns, and appurtenances, and as to the invention and letters patent "for all the remainder, now to come and unexpired of the said term granted by the said letters patent, and of every other term and interest and extension thereof to be hereafter granted therein."

Sladdin and Ellis, after the usual covenants of title, covenant, among other things, that they "will not at any time or times hereafter during the residue or remainder of the said term of fourteen years, or for or during any other term or interest hereby assigned or intended so to be, make, do, or execute, or knowingly or willingly permit, or suffer any act, deed, matter, or thing whatsoever, whereby or by reason or means whereof the said letters patent and privileges, or any part thereof, can, shall, or may be revoked, repealed, canceled, avoided, determined, or prejudicially affected in any manner howsoever, or whereby, or by reason or means whereof the said David Bowlas, his executors, administrators, or assigns, may, can, or shall be in any wise prevented or hindered from or impeded in or about the having, receiving, taking, exercising, or enjoying the said privileges, letters patent, and premises hereby assigned, or intended so to be, or any part thereof, to and for his and their own use and benefit for and during all the residue and remainder of the said term of fourteen years, and for and during all other the term, right, and interest therein hereby granted or assigned, or intended so to be, and every part thereof."

Then follows a covenant for further assurance at the request and cost of said Bowlas to execute and perfect all acts, deeds, and assurances for more effectually assuring the said invention, letters patent, and premises, and also for extending the time, and also for enabling him to prosecute necessary suits in the event of any infringement. They further covenant that they will not, nor will either of them, during the time for which said patent was granted, or during any extended time which may be granted therefor, make, sell, or cause to be made or sold, any other machine for the purposes to which the said machine is applicable, all or any of them, and that they and each of them will, until the said patent and any extension thereof be fully expired, refer to the said David Bowlas, his executors, administrators, and assigns, all inquiries having reference to the said patent and to machines to be made thereunder or with reference thereto, and that they or either of them will not, without the consent and permission of the said David Bowlas, his executors, administrators, or assigns, make any more machines of a like character, or invent or introduce any machine or invention to supersede or compete with the invention of the said letters patent, or in any way to disadvantage the patent right or privileges hereby assigned.

Afterward, on or about August 4, 1868, Joseph Sladdin procured letters patent of the United States to be issued to himself and Lord, the other respondent in this case, for improvement in machines for making loom-harness, which letters patent were afterward, for defective and insufficient description and specification, surrendered, and new letters patent for the same invention, on two separate amended specifications, were reissued in two divisions, numbered, respectively, 4,509 and 4,510.

Subsequent to the assignment of the English patent to Bowlas, and before the issuing of the letters patent of the United States, the complainants, Emmons and Nichols, respectively, each purchased of David Bowlas, the owner of the invention and letters pat-

ent, machines for making loom-harness, embracing in their construction the principles of said invention, with the right to use said machines, and imported them into the United States, and have since severally used said machines in their respective manufactories. Thereupon, during the year 1872, Sladdin and Lord, named as patentees in the letters patent of the United States, filed bills of complaint in this court against Emmons and Nichols, respectively, alleging infringement of the letters patent of the United States by the use of the machines purchased of Bowlas and "built in England, embracing the same improvements which are patented in this country, as aforesaid in said reissued patents."

While these suits for infringement were pending, David Bowlas, having deceased in 1874, his executors and personal representatives executed an instrument under seal purporting to convey to the complainants, Emmons and Nichols, the reissued letters patent of the United States Nos. 4,509 and 4,510; and the original letters patent on which they were reissued, the invention in said letters patent described, and all the rights, powers, privileges, benefits, advantages, and all and every other matter, interest, and thing which were conveyed by the assignment from Ellis and Sladdin to David Bowlas.

The bill of Emmons and Nichols. the complainants, alleges these facts, and avers that, by force of the assignment to Bowlas of the invention and of the covenants and agreements in that indenture, the interest in the letters patent of the United States, and the reissued letters patent Nos. 4,509 and 4,510, was vested in Bowlas and his legal representatives, and secured to him and them the exclusive right and liberty of making, vending, and using in the United States the invention specified and claimed in the amended specifications Nos. 4,509 and 4,510; and that, in virtue and by force of the assignment and conveyance from the executors of the estate of Bowlas to the complainants, the reissued letters patent of the United States and the invention therein recited, and the English patent and the invention therein recited, became the property and letters patent of the complainants.

The bill further charges that the institution of the suits in equity against the complainants severally, by Sladdin. is an interference with the use and enjoyment by Bowlas and his assigns of the invention and letters patent conveyed to him, which the complainants aver to be in violation of the covenants not to impede, hinder, interrupt, or interfere with said use and enjoyment; and further, that defendants, without right and without license from Bowlas or his assigns, and in violation of the covenants in the indenture, have made, used. and sold machines to which the said invention is applicable. and machines of like character, and are still wrongfully making and using such machines against the rights of the complainants.

The bill prays that respondents may be enjoined and restrained from the further prosecution of the suits against Emmons and Nichols respectively, and that they may be restrained from making, using, or vending, without the consent of the complainants, machines embracing the invention aforesaid, or any substantial part thereof, and from doing any act whereby complainants shall be hindered in the free enjoyment of the said invention and letters patent.

To this bill the defendants have demurred, and for causes of demurrer assign in substance the following:

1. Because the assignments from Ellis and Sladdin conveyed to Bowlas only the invention and letters patent for the unexpired term of the patent and any extensions and renewals thereof for Great Britain only.

2. Because the assignment was not recorded in the Patent Office of the United States within ninety days from the execution thereof, and not till after the letters patent of the United States were granted to Sladdin and Lord, and after Lord had become the owner of one-half of the patent and the reissues thereof.

The third and fourth reasons present in different form substantially the same question presented in the first ground of demurrer.

The fifth ground is "because the said reissued patent of the United States granted to this defendant and the defendant Lord, No. 4,510, is not for any invention recited, described, or claimed in said letters patent of Great Britain, but is for other and different inventions."

6. Because it is not alleged in said bill that said several letters patent were obtained at the request or cost of said Bowlas, or that he in his lifetime ever claimed any interest therein.

The discovery of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires. Such inchoate right, not only to the original letters patent that may issue, but to any renewals or extensions, or to any letters patent which may thereafter be issued at any time or in any place, may be conveyed by an instrument containing apt terms to show an intention to convey all the rights springing from the invention. Clum v. Brewer [Case No. 2,909]; Nesmith v. Calvert [Id. 10,123]; Gayler v. Wilder, 10 How. [51 U. S.] 477; Nicolson Pavement Co. v. Jenkins, 14 Wall. [81 U. S.] 452.

In this last case, the patentee having taken out letters patent of the United States, granted to an assignee in the words following: "all the right, title, and interest which I have in the said invention and letters patent for and in the said city of San Fran-

cisco." There were no other words of grant in the instrument. The habendum clause was "the same to be held and enjoyed by the said Taylor for the use and behoof of him and his legal representatives to the full end of the term for which the said letters patent are or may be granted as fully," etc.

It was contended that the words in the habendum clause could not be construed to enlarge the grant by extending the contract to a subject-matter not before embraced in the recitals or in the granting portions of the deed. It was also argued that the words in the habendum clause, "for which the said letters patent are or may be granted," could be satisfied by making them embrace any reissue of "the said letters patent." But the supreme court held that "it would be a narrow rule of construction to say that they were designed to apply to a reissue merely when the invention itself, by the very words of the assignment, is transferred," and that the assignment transferred the extension and renewal of the patent subsequently made. The law must, therefore, be considered as settled by this decision, that whenever a patentee conveys his "invention" without any other language in the deed of conveyance restricting the right to use the invention by a limitation of time or place, he must be considered to have granted the right to any letters patent which may be issued thereon.

Applying these principles to the consideration of the assignment from Ellis and Sladdin to Bowlas, let us examine it to see what it purports to convey, and whether it does or not evince an intention to invest the whole interest in the assignee. It grants "the said recited invention and letters patent." In a subsequent clause it grants "all and singular other the letters patent and extensions of time thereof to be hereafter obtained on account thereof," and "all models, patterns, and other matters and explanations thereof in the possession of the said James Ellis and Joseph Sladdin, and all the right, title, interest, claim, and demand of the said James Ellis and Joseph Sladdin, and each of them, in, to, or out of, or upon the said several premises, and also the said machine."

Words of broader signification, or more fully indicative of an intention to invest the grantee with the whole interest in the invention, could hardly have been used; nor is there to be found in the subsequent parts of the instrument any language expressive of an intention to limit or restrict the right to use the invention to the duration of the English patent. The habendum clause is not only for the unexpired term of the letters patent of Great Britain (the said letters patent) but "of every other term and interest, and extensions thereof, to be hereafter granted therein."

Wherever after in the covenants the term of the English patent is referred to, it is supplemented by such expressions as "for and during any other term or interest hereby assigned or intended so to be," and "all other the term, right, and interest therein hereby granted or intended so to be."

There is but one exception to this, and that is that the covenants not to make or cause to be made any other machine for the purposes to which said invention is applicable, and to refer to Bowlas all inquiries respecting the machine, and not to make any machines of like character, or make any invention to supersede or compete with the one assigned, are limited to the time for which the said patent is granted, or during any extended time which may be granted therefor.

Upon the authority of the cases before cited it must be held that the terms of the grant to Bowlas were sufficiently broad to divest Ellis and Sladdin of any interest in the invention described, and to vest the same in Bowlas. Under these circumstances it would be the most flagrant injustice to sustain a claim for infringement on the part of Sladdin against Emmons and Nichols by reason of the use by them of the machines purchased of Bowlas; nor is it perceived how Lord, who acquired his rights of Sladdin, who had nothing to convey so far as any invention of his was embodied in the English machine, could have acquired any rights as against such machines as were purchased of Bowlas, and therefore, are held under a title from Sladdin, which is prior and paramount to any title he could have conveyed to Lord.

It is objected against the claims of Emmons and Nichols to the equitable title to the letters patent of the United States, that such patents were not obtained at the request and cost of Bowlas. This objection cannot avail, for the reason that Ellis and Sladdin, having conveyed all their interest in the invention and to any letters patent that might be obtained therefor to Bowlas and his assigns, and being under obligation by their covenants to take out such other letters patent at his request and cost, could not take out such letters patent for their own benefit without a fraud on the rights of Bowlas, although not requested to take them out for his benefit. They had a right to the advance of the expenses by Bowlas before taking out other letters patent; but, if they or either of them took them out without requiring such advance, and without any grant or authority from Bowlas, the title of Sladdin, and probably the title of Lord also, must be held to be only in trust for Bowlas and his assigns so far as the letters patent of the United States embraced any invention made by Sladdin before the conveyance to Bowlas, and incorporated either in the English machine or in the letters patent of Great Britain.

It is clear that one division of the reissued letters patent claims in substance only what is claimed in the English patent, and the

same is true of part of the claims in the other division, so far at least as claiming inventions, which were embodied in the English machine and described in the English patent as parts of the combinations referred to in the claims, even if not separately claimed. As the answer sets up a license or authority from Bowlas to Sladdin, the full determination of the rights of the respective parties to the letters patent of the United States cannot be made until the final hearing of the cause.

The cases of Sladdin and Lord against Emmons, and the same against Nichols, must, therefore, stand to await the final decree to be made after a full hearing in this case.

The demurrer in this case is adjudged bad, and is overruled, and the case stands for further proceedings under the rules.